DECISION AND JUDGMENT ENTRY
Peter Tallerico appeals the decision of the Scioto County Court of Common Pleas. He argues that the trial court erred in ordering him to pay approximately thirty-three thousand dollars to Margaret Tallerico. Because we find that the trial court did not err in finding certain Bank One stock to be Margaret's separate property or in splitting the marital property equally, we disagree. Peter also argues that the trial court erred in ordering him to pay five hundred dollars per month in spousal support. Because we find that the trial court did not abuse its discretion, we disagree. Accordingly, we affirm the judgment of the trial court.
 I.
The parties married in 1977 and had no children as issue of the marriage. Margaret filed for divorce in 1998. The trial court ordered Peter to pay temporary spousal support of one thousand dollars plus poundage per month.
In September 1998, the trial court held a trial on the complaint for divorce. At the hearing, each party testified in detail as to investments held both in their own names and jointly. Margaret testified that at the time of the hearing she had 4,143 shares of Bank One stock. She testified that before the parties married she had 289 shares of First Bank Group, an entity that later became part of Bank One. This stock split several times during the marriage, eventually totaling 3478.5707 shares. She testified that she purchased an additional 330 shares with dividends from the stock. The 330 shares have since split to total 664.3725 shares.
The parties twice asked the court to postpone its decision because there was a possibility that they had settled the case, but ultimately informed the court that they could not settle. On January 31, 2000, the trial court filed its decision. It found that the post-trial memoranda of the parties indicated that they agreed on many issues. Peter's post-trial memorandum begins with the statement that he "for the most part agrees with the analysis set forth in [Margaret's] memorandum." The memorandum makes no mention of Margaret's memorandum's analysis that the Bank One stock remained separate even though it split. The memorandum also provides that "[t]he court must equalize the division of the assets," and calculated that Peter should pay $45,270.50 to Margaret if the trial court divided the assets according to his calculations.
After characterizing the parties' property as marital or separate, the trial court divided the marital property. Peter received real estate worth $127,810, stocks worth $194,255, a bank account worth $18,000, interest in an insurance escrow account worth $5,000, for a sum total of $345,065. The trial court found that $6,000 of this amount was separate property, and adjusted the sum total to $339,065. Margaret received real estate worth $93,172, stocks and investments worth $100,322, an annuity worth $36,483, and a bank account worth $42,651, for a sum total of $272,628. The trial court found that Peter received $66,437 more in marital property than Margaret and ordered Peter to pay Margaret $33,218.50 to equalize the division of marital property.
The trial court then considered the issue of spousal support. Although the trial court did not set forth the statutory factors, or refer to the appropriate code sections, the trial court considered: (1) the ages, physical and mental conditions of the parties (R.C. 3105.18(c)); (2) the employment history of the parties and their likelihood of future employment (R.C. 3105.18(b)); (3) the income of the parties from work and investments (R.C. 3105.18(a)); (4) the tax consequences of a spousal support award (R.C. 3105.18(l); (5) the standard of living of the parties during the marriage (R.C. 3105.18(g); (6) the retirement benefits of the parties (R.C. 3105.18(d)); and (7) the length of the marriage (R.C.3105.18(e)). After considering the factors, the trial court ordered Peter to pay $500 per month in spousal support. The trial court retained jurisdiction to modify its award. On February 22, 2000, the trial court filed the final decree of divorce.
Peter appeals and asserts the following assignments of error:
 I. The trial court erred in ordering the Defendant-Appellant to pay to Plaintiff-Appellee the sum of Thirty-Three Thousand, Two Hundred, Eighteen Dollars and 50/100.
 II. The trial court erred in ordering Defendant-Appellant to pay to Plaintiff-Appellee spousal support of Five Hundred Dollars ($500) per month.
 II.
In his first assignment of error, Peter argues that the trial court erred in ordering him to pay Margaret $33,218.50 for two reasons: (1) the trial court erred in characterizing $188,000 of her stock in Bank One as separate property, and (2) the trial court abused its discretion because the parties used Peter's income to pay their living expenses, including the tax liability on her investments, while they invested the wife's earnings. We address each argument in turn.
 A.
Peter argues that the appreciation in value of Margaret's Bank One stock was the result of "stock dividends received in the form of stock splits." He asserts that in Pickens v. Pickens (Nov. 12, 1993), Meigs App. No. 92-CA-501, unreported, we determined that dividend income is a marital asset.
Margaret argues that the Bank One stock that she owned prior to the marriage remained separate property even after it split.
When a trial court grants a divorce, it must determine whether the parties' property is marital or separate. R.C. 3105.171(B). The trial court's characterization of property as marital or separate involves a factual inquiry. Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159;Wright v. Wright (Nov. 10, 1994), Hocking App. No. 94CA02, unreported. We will not disturb such a finding unless it is against the manifest weight of the evidence. Barkley at 159; Wylie v. Wylie (May 30, 1996), Lawrence App. No. 95CA18, unreported; Miller v. Miller (Dec. 1, 1993), Washington App. No. 93CA07, unreported. A judgment of a trial court will not be reversed as being against the manifest weight of the evidence if some competent, credible evidence supports the court's judgment. Sec. PacificNatl. Bank v. Roulette (1986), 24 Ohio St.3d 17, 20; Barkley at 159. We are guided by the presumption that the trial court's findings are correct since the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the testimony. In re Jane DoeI (1991), 57 Ohio St.3d 135; Barkley at 159.
Marital property includes property currently owned by either or both of the spouses that was acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a)(i). Therefore, property acquired during the marriage is presumed to be marital property, unless it is shown to be separate property. Barkley at 160.
Separate property includes any property acquired by one spouse before the marriage and passive income and appreciation acquired from separate property during the marriage. R.C. 3105.171(A)(6)(a)(ii) (iii). Passive income is "income acquired other than as a result of the labor, monetary or in-kind contribution of either spouse." R.C. 3105.171. See, alsoMiddendorf v. Middendorf (1998), 82 Ohio St.3d 397, 400. Separate property is presumed to remain separate as long as it is traceable, regardless of whether it has been commingled with other property.Barkley at 160.
We first address Peter's argument that we should follow Pickens and determine that dividends earned during the marriage from separate property are marital property. In Pickens, the husband filed for divorce prior to the enactment of R.C. 3151.171. Accordingly, we explicitly declined to consider the effect of R.C. 3151.171 on a determination of whether property was marital or separate. See, Pickens at fn. 2. Instead we proceeded "with our analysis under the substantive law in effect when the action was commenced." Id. Here, Margaret filed a complaint for divorce well after the effective date of Am.Sub.H.B. No. 514, which enacted R.C. 3151.171. Therefore the analysis of whether dividend income earned during the marriage from separate property is marital income should focus on the tests articulated in R.C. 3151.171. Our analysis inPickens is irrelevant to such a determination. Therefore we find thatPickens is distinguishable and has no bearing on our analysis.
Here, the additional shares of Bank One stock that resulted from stock splits resulted in no net increase in their value, and as such, the shares remain separate property. A stock split does not increase the value of a share, it simply increases the number of the shares while simultaneously decreasing the value of the resulting shares. The value of the shares after the split equals the value of the shares before the split. Thus, Margaret received no income as a result of the split, and thus the split did not generate any additional property.
 B.
Peter next argues that the trial court erred by splitting the marital property equally. He asserts that the trial court did not take into account that the parties used Peter's income to pay their living expenses, including the tax liability on her investments, while they invested the wife's earnings. A trial court has broad discretion when dividing marital property. Bisker v. Bisker (1994), 69 Ohio St.3d 608,609, citing Berish v. Berish (1982), 69 Ohio St.2d 318. However, a trial court's discretion is not unbridled. Brisker at 309. "The award need not be equal, but it must be equitable." Id., citing Cherry v. Cherry
(1981), 66 Ohio St.2d 348. We will not substitute our judgment for that of the trial court unless the trial court's decision is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
While R.C. 3105.171(C)(1) expresses a preference for dividing the marital property "equally," a trial court may exercise its discretion to divide the property in a manner it deems "equitable." Arthur v. Arthur
(Nov. 3, 1999), Washington App. No. 98CA49, unreported.
In his post-trial memorandum, Peter urged the trial court to equally divide the marital property. He cannot now claim that the trial court erred in doing what he invited the court to do. "[A] litigant may not `take advantage of an error which he himself invited or induced.'" Statev. Campbell (2000), 90 Ohio St.3d 320, 324, quoting Hal ArtzLincoln-Mercury, Inc. v. Ford Motor Co. (1986), 28 Ohio St.3d 20, paragraph one of the syllabus.
Having rejected Peter's arguments, we overrule his first assignment of error.
 III.
In his second assignment of error, Peter argues that the trial court abused its discretion in awarding spousal support to Margaret.
It is well settled that trial courts enjoy broad discretion in awarding spousal support. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67; Cherry v.Cherry (1981) 66 Ohio St.2d 348. A court's decision awarding or failing to award spousal support will not be reversed on appeal absent an abuse of that discretion. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 24;Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. An abuse of discretion is more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable. Masters v.Masters (1994), 69 Ohio St.3d 83, 85; Blakemore, supra.
Once a party requests spousal support, the court may award an "appropriate and reasonable" amount. R.C. 3105.18.[2] In determining what is "appropriate and reasonable" the court's discretion must be guided by the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
R.C. 3105.18(C)(1); Cherry at 355. When making a spousal support award, a trial court must consider all statutory factors, and not base its determination upon any one of those factors taken in isolation.Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, paragraph one of the syllabus.
However, we do not engage in an analysis of the statutory factors to determine what amount, if any, the trial court should have awarded as spousal support. Rather, our review is limited to whether the trial court abused its discretion in making its determination.
Peter argues that the trial court failed to consider the following items: (1) the potential interest income from the $33,000 Peter must pay to Margaret that Peter will lose and Margaret will gain; (2) the potential that Peter's earnings will decrease if he retires from his insurance business; (3) the retirement benefits Margaret is eligible for through her Prudential investment. Peter also argues that the trial court placed too much emphasis on the fact that the parties enjoyed a high standard of living while married.
The trial court did not abuse its discretion in awarding $500 per month in spousal support to Margaret. The trial court explicitly considered the relevant factors, including the parties' income (including income from the Prudential investment), ages, health, employment histories, retirement benefits, standard of living, the likelihood of future employment, the tax consequences of the spousal support award, and the length of the marriage. The trial court reserved jurisdiction to modify the spousal support award. Therefore, if Peter retires, the trial court may consider whether to modify the award of spousal support. We find that the trial court did not act unreasonably, arbitrarily, or unconscionably in awarding spousal support. Accordingly, we overrule Peter's second assignment of error.
 IV.
In sum, we overrule both of Peter's assignments of error and affirm the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
 _____________________ Roger L. Kline, Judge
Harsha, J. and Evans, J.: Concur in Judgment and Opinion.
[2] The pre-1991 version of R.C. 3105.18 based spousal support on the recipient's need rather than what was "appropriate and reasonable." Roddyv. Roddy (Jan. 11, 1999), Pike App. No. 97CA600, unreported, fn. 5.